UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

KELLIE W.[1],                          )
                                       )
                  Plaintiff,           )
                                       )
       v.                              )   Case No. 1:21-cv-062
                                       )
KILOLO KIJAKAZI[2],                    )
Commissioner of Social Security,       )
                                       )
                  Defendant.           )

## OPINION AND ORDER

This matter is before the court on petition for judicial review of the decision of the

Commissioner filed by the plaintiff, Kellie W., on February 10, 2021. For the following reasons,

the decision of the Commissioner is **AFFIRMED.**

### *Background*

The plaintiff, Kellie W., filed applications for Disability Insurance Benefits and

Supplemental Security Income, alleging a disability onset date of June 7, 2019. (Tr. 15). The

Disability Determination Bureau denied Kellie W.'s applications initially on August 15, 2019,

and again upon reconsideration on October 4, 2019. (Tr. 138-39, 156-57). Kellie W.

subsequently filed a timely request for a hearing on October 14, 2019. (Tr. 194-95). A hearing

was held on August 25, 2020, via telephone, before Administrative Law Judge (ALJ) Terry

Miller. (Tr. 34). Vocational Expert (VE) Theresa Kopitzke also appeared at the hearing. (Tr.

34). The ALJ issued an unfavorable decision on September 8, 2020. (Tr. 15-28). The Appeals

---

[1] To protect privacy, the plaintiff's full name will not be used in this Order.
[2] Andrew M. Saul was the original Defendant in this case. He was sued in his capacity as a public officer.
On July 9, 2021, Kilolo Kijakazi became the acting Commissioner of Social Security. Pursuant to
**Federal Rule of Civil Procedure 25(d)**, Kilolo Kijakazi has been automatically substituted as a party.

Council denied review making the ALJ's decision the final decision of the Commissioner.  (Tr. 1-6).

First, the ALJ found that Kellie W. met the insured status requirements of the Security Act through December 31, 2020.  (Tr. 18).  At step one of the five-step sequential analysis for determining whether an individual is disabled, the ALJ found that Kellie W. had not engaged in substantial activity since June 1, 2018, the amended alleged onset date.  (Tr. 18).

At step two, the ALJ determined that Kellie W. had the severe impairments of chronic headache/migraine disorder with intermittent vertigo; back and neck pain complaints with some evidence of lumbar and cervical degenerative discs/myofascial pain (status post reported multiple motor vehicle accidents in the past); right knee problems (including degenerative changes, ganglion cyst, and ruptured Baker's cyst); remote history of chemical burn to her left hand; COPD with a smoking history; schizoaffective disorder; bipolar disorder; delusional disorders; and anxiety.  (Tr. 18).  The ALJ found that the above medically determinable impairments significantly limited Kellie W.'s ability to perform basic work activities.  (Tr. 18). Kellie W. also alleged disability due to restless leg syndrome, urinary frequency, allergies, spider/insect bite, rashes/contact dermatitis, facial swelling and numbness, chest pain/chest wall pain, vitamin D deficiency, eye problems, flank pain, right hand laceration, GERD, toenail fungus, sinus problems, left wrist pain, and blue fingertips.  (Tr. 18).  However, the ALJ indicated that those impairments caused no more than minimal limitations on her ability to engage in basic work activities, and therefore considered them non-severe.  (Tr. 18-19).

At step three, the ALJ concluded that Kellie W. did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.  (Tr. 19).  The ALJ found that no

medical evidence indicated diagnostic findings that satisfied any listed impairment.  (Tr. 19-23).

After consideration of the entire record, the ALJ then assessed Kellie W.'s residual

functional capacity (RFC) as follows:

> [T]he claimant has the residual functional capacity to perform light
> work as defined in 20 CFR 404.1567(b) and 416.967(b) except that
> her ability to stand/walk, in combination, is limited to 4 out of 8
> hours in an eight-hour workday.  She can also only occasionally
> climb ramps and stairs, balance, stoop, kneel, crouch, and crawl and
> she can never climb ladders, ropes, or scaffolds.  She can only
> frequently engage in bilateral reaching, handling, and fingering.  She
> also needs to avoid concentrated exposure to extreme cold, heat,
> humidity, loud noises, bright/flashing lights, pulmonary irritants
> (including fumes, odors, dust, gases, poorly ventilated areas, and
> chemicals), and hazards (including operational control of dangerous
> moving machinery, unprotected heights, and
> slippery/uneven/moving surfaces).  Mentally, the claimant is limited
> to understanding, carrying out, and remembering simple instructions
> consistent with unskilled work (defined as occupations that can be
> fully learned within a short period of time of no more than 30 days
> and that require little or no judgment to perform simple tasks), with
> the ability to sustain those tasks throughout the eight-hour workday
> without frequent redirection to tasks.  She should not work in an
> environment that is stringently production or quota based and thus
> she may not perform fast-paced assembly-line type of work but she
> can meet production requirements that allow her to sustain a flexible
> and goal-oriented pace.  Her ability to use judgment in making
> work-related decisions is limited to making only simple work-
> related decisions.  She can also respond appropriately to usual work
> situations and deal with routine changes in a routine work setting.
> She can further have only superficial interactions with supervisors
> and co-workers (defined as occasional and casual contact with no
> prolonged conversations) and she should not have any interactions
> with the general public.

(Tr. 23-24).  After considering the evidence, the ALJ found that Kellie W.'s medically

determinable impairments could reasonably have been expected to cause the alleged symptoms.

(Tr. 24).  However, he found that the medical record did not document sufficient objective

medical evidence to substantiate the severity of the pain and degree of functional limitations

alleged by the claimant.  (Tr. 24-25).

At step four, the ALJ found that Kellie W. was unable to perform any past relevant work. (Tr. 26).  However, the ALJ found jobs that existed in significant numbers in the national economy that Kellie W. could perform.  (Tr. 26-27).  Therefore, the ALJ found that Kellie W. had not been under a disability, as defined in the Social Security Act, from June 1, 2018, through the date of the ALJ's decision.  (Tr. 27-28).

*Discussion*

The standard for judicial review of an ALJ's finding that a claimant is not disabled within the meaning of the Social Security Act is limited to a determination of whether those findings are supported by substantial evidence.  **42 U.S.C. § 405(g)** ("The findings of the Commissioner of Social Security, as to any fact, if supported by substantial evidence, shall be conclusive."); **Moore v. Colvin**, 743 F.3d 1118, 1120–21 (7th Cir. 2014); **Bates v. Colvin**, 736 F.3d 1093, 1097 (7th Cir. 2013) ("We will uphold the Commissioner's final decision if the ALJ applied the correct legal standards and supported her decision with substantial evidence.").  Courts have defined substantial evidence as "such relevant evidence as a reasonable mind might accept to support such a conclusion."  **Richardson v. Perales**, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 852 (1972) (quoting **Consol. Edison Co. v. NLRB**, 305 U.S. 197, 229, 59 S. Ct. 206, 217, 83 L. Ed. 2d 140 (1938)); *see* **Bates**, 736 F.3d at 1098.  A court must affirm an ALJ's decision if the ALJ supported his findings with substantial evidence and if there have been no errors of law.  **Roddy v. Astrue**, 705 F.3d 631, 636 (7th Cir. 2013) (citations omitted).  However, "the decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues." **Lopez ex rel Lopez v. Barnhart**, 336 F.3d 535, 539 (7th Cir. 2003).

Disability insurance benefits are available only to those individuals who can establish "disability" under the terms of the Social Security Act.  The claimant must show that she is

4

unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." **42 U.S.C. § 423(d)(1)(A)**. The Social Security regulations enumerate the five-step sequential evaluation to be followed when determining whether a claimant has met the burden of establishing disability. **20 C.F.R. §§ 404.1520, 416.920**. The ALJ first considers whether the claimant is presently employed and "doing . . . substantial gainful activity." **20 C.F.R. §§ 404.1520(b), 416.920(b)**. If she is, the claimant is not disabled, and the evaluation process is over. If she is not, the ALJ next addresses whether the claimant has a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities." **20 C.F.R. §§ 404.1520(c), 416.920(c)**; *see Williams v. Colvin*, 757 F.3d 610, 613 (7th Cir. 2014) (discussing that the ALJ must consider the combined effects of the claimant's impairments). Third, the ALJ determines whether that severe impairment meets any of the impairments listed in the regulations. **20 C.F.R. § 401, pt. 404, subpt. P, app. 1**. If it does, then the impairment is acknowledged by the Commissioner to be conclusively disabling. However, if the impairment does not so limit the claimant's remaining capabilities, the ALJ reviews the claimant's "residual functional capacity" and the physical and mental demands of her past work. If, at this fourth step, the claimant can perform her past relevant work, she will be found not disabled. **20 C.F.R. §§ 404.1520(e), 416.920(e)**. However, if the claimant shows that her impairment is so severe that she is unable to engage in her past relevant work, then the burden of proof shifts to the Commissioner to establish that the claimant, in light of her age, education, job experience, and functional capacity to work, is capable of performing other work and that such work exists in the national economy. **42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1520(f), 416.920(f)**; *see Biestek v.*

*Berryhill,* 139 S. Ct. 1148 (2019) (upon the disability benefits applicant's request, vocational expert's refusal to provide the private market-survey data underlying her opinion regarding job availability does not categorically preclude the expert's testimony from counting as "substantial evidence" but, instead, the inquiry is case-by-case).

Kellie W. has requested that the court remand this matter for additional proceedings.  In her appeal, Kellie W. has offered only one argument in favor of remand. She alleges that the ALJ's findings at step five were not supported by substantial evidence, as the VE's testimony regarding national job numbers did not rise to the level of significance required by the regulations.

At step five, the burden shifts from the claimant to the Commissioner.  *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 352 (7th Cir. 2005).  At step five, it is the Commissioner's burden to establish that a claimant's RFC allows her to engage in work found in "significant numbers" in the national economy.  *Liskowitz v. Astrue*, 559 F.3d 736, 742-43 (7th Cir. 2009); *see* **20 C.F.R. §§ 404.1566, 416.966**.  Relying on the VE's testimony, the ALJ found that Kellie W. was capable of performing the following jobs: office helper (with 15,000 jobs nationally), mail clerk (with 13,000 jobs nationally), and price marker (with 20,000 jobs nationally).  (Tr. 27).  This amounts to 48,000 jobs in the national economy that Kellie W. could perform with her RFC.  Kellie W. relies on *Sally S. v. Barryhill*, 2019 WL 3335033, at *11 (N.D. Ind. July 23, 2019) in arguing that 48,000 jobs did not amount to "significant numbers," and therefore Kellie W. asserts that the ALJ failed to fulfill the Commissioner's burden.

The Seventh Circuit has not established a threshold for what constitutes significant numbers to satisfy the step five requirement.  *See Weatherbee v. Astrue*, 549 F.3d 565, 572 (7th Cir. 2011) (finding 140,000 positions available nationally to be "well above the threshold for

significance," but declining to identify the threshold).  The Seventh Circuit has held in two

unpublished opinions that as few as 30,000 jobs nationally are significant, but both cases, along

with *Weatherbee*, rely on *Liskowitz*, focused on regional numbers rather than national numbers.

*Liskowitz*, 559 F.3d at 743; *Primm v. Saul*, 789 Fed. Appx 539, 546 (7th Cir. 2019); *Mitchell v.*

*Kijakazi*, 2021 WL 3086194, at *3 (7th Cir. 2021).

  District judges in this circuit do not agree as to whether it is proper to rely on *Liskowitz* in

discussing what constitutes "significant numbers" nationally, and some have "accused the

Seventh Circuit of misapplying *Liskowitz* in cases (like *Mitchell, Weatherbee,* and *Primm*)

involving national numbers."  *Engel v. Kijakazi,* 2021 WL 4843871, at *11 (E.D. Wis. Oct. 18,

2021) (collecting cases).  Others, like *Engel*, assert that it is possible that the Seventh Circuit is

indicating that reliance on *Liskowitz* is proper by relying on it in *Mitchell, Weatherbee,* and

*Primm*; *Engel*, 2021 WL 4843871, at *11.  "More likely, though, it appears from the Seventh

Circuit's interpretation of its own prior holding in *Liskowitz* that 1,000 jobs nationally can be a

significant number of jobs." *Engel*, 2021 WL 4843871, at *11.

  Regardless of whether *Liskowitz* may be considered precedential for national job

numbers, many courts have found that numbers as low as 6,000 national jobs to be significant.

*Engel*, 2021 WL 4843871, *11 (collecting cases).  Kellie W. relies on a single district court

cases which found that 120,350 jobs nationally was not a significant number.  *Sally S.,* 2019 WL

3335033, at *11.  This case, however, appears to be an outlier, even among the same district

judge's rulings.  The same judge in *Sally S.* also held that as few as 50,566 jobs was a significant

number of jobs nationally.  *See Rhonda F. v. Kijakazi*, 2022 WL 292738, at *7 (N. D. Ind. Feb.

1, 2022); *see also John B. v. Kilolo Kijakazi*, 2022 WL 669900, at *6 (N.D. Ind. Mar. 7, 2022)

(finding 59,000 jobs nationally to be a significant number).   The judge relied on other recent

cases in the Northern District of Indiana, which held that as few as 41,000 jobs nationally to be a significant number. *See Zych v. Kijakazi*, 2021 WL 5319880, at *5 (N.D. Ind. Nov. 16, 2021) ("Given the foregoing persuasive authority, and the lack of clarity in this circuit as to what constitutes a significant number of jobs, I conclude that 41,000 jobs in the national economy is a 'significant number' of jobs for the purposes of the ALJ's step-five determination in this case."); *Dugan v. Kijakazi*, 2021 WL 5231731, at *4 (N.D. Ind. Nov. 9, 2021) ("Therefore … I conclude that 99,000 jobs is a 'significant number' of jobs for purposes of the ALJ's step-five determination in this case."). Other district courts within this circuit have found that as few as 17,700 jobs is considered a significant number. *Dorothy B. v. Berryhill*, 2019 WL 2325998, at *7 (N.D. Ill. May 31, 2019).

In the absence of a clear guidance from the Seventh Circuit, district courts have turned to other circuits for guidance. *See, e.g., Wildenberg v. Kijakazi*, 2021 WL 4077498, at *7 (W.D. Wis. Sept. 8, 2021); *Marko L v. Saul*, 2021 WL 843427, at *7 (N.D. Ill. Mar. 5, 2021). The Third, Sixth, and Eighth Circuits have all held that much fewer than 48,000 jobs is a significant number of jobs in the national economy, with all three circuits holding that anywhere from 6,000-18,000 jobs in the national economy is considered significant. *See Sanchez v. Comm'r of Soc. Sec.*, 705 F.App'x 95, 99 (3d Cir. 2017) (finding 18,000 jobs in the national economy to be significant); *Taskila v. Comm'r of Soc. Sec.*, 819 F.3d 902, 905 (6th Cir. 2016) (finding 60,000 jobs in the national economy to be significant); *Johnson v. Chater*, 108 F.3d 178, 180 (8th Cir. 1997) (finding 10,000 jobs in the national economy to be significant). Based on case law both within this circuit and among other circuits, it is evident that 48,000 jobs is significant for the purposes of step five. "This court has no ready guidance, other than to note that the ALJ's reliance of evidence of jobs in the national economy in the tens of thousands to find the claimant

capable of full-time work appears consistent with decades of case law and the applicable regulations ….” *Sundsmo v. Saul*, 2020 WL 6817112, at \*7 (W.D. Wis. Nov. 20, 2020). Considering the foregoing cases, it is clear that 48,000 jobs in the national economy is a “significant number” for the purposes of the step five determination.

Kellie W. further argues that *Sally S.* requires looking at job numbers as a percentage of total jobs in the economy, which would find that Kellie W. is capable of performing only .032% of total jobs in the national economy.  Kellie W. argues that under *Sally S.*, the ability to perform .080% of total jobs in the national economy did not amount to a “significant number” of jobs, and therefore .032% cannot be a significant number.  *Sally S.*, 2019 WL 3335033, at \*11. However, there is no evidence that this percentage application is the proper way to determine whether job numbers are considered “significant.” No case has held that this is the only way, or even the best way, to determine whether job numbers constitute a “significant number.” Therefore, the ourt finds this argument unpersuasive.

Assuming arguendo that this percentage calculation under *Sally S.* is valid, Kellie W. has not shown that these numbers are not a “significant number” for the purposes of step five.  Using the methods proffered by Kellie W., the court can attempt to convert the national numbers to regional numbers.  The total number of full-time jobs in Indiana for August 2020 (the month of Kellie W.’s hearing) were either 3,147,142, or 3,146,017 (the seasonally adjusted numbers).[3] Using the percentages provided by Kellie W., the jobs that the ALJ found that she could perform would exist in the following numbers in Indiana[4]: 314 (office helper), 283 (mail clerk), and 409 (price marker).  The total number of the three occupations would be either 1,007 jobs (using

---

[3] www.hoosierdata.in.gov/MonthlyBriefing/LMI-Aug2020.pdf , page 14 (last accessed April 18, 2022).
[4] The difference between using the full number (3,147,142) or the seasonally adjusted number (3,146,017) rendered the difference to be less than 1 when rounding down.  For the purposes of step five, this difference is marginal to non-existent. Here, the non-seasonally adjusted numbers were used.

Kellie W.'s percentage calculation[5]), or 1,0006 (adding the three job numbers together). Either way, these reduced figures remain "significant" for the purposes of step five under ***Liskowitz***. *See **Liskowitz***, 559 F.3d at 743 (holding that [a]s few as 174 jobs have been held to be significant, … and it appears to be well-established that 1,000 jobs is a significant number.") (collecting cases).

Given the lack of definitive guidance from the Seventh Circuit as to what constitutes a significant number of jobs, combined with the persuasive authority regarding significant numbers, this court finds that 48,000 jobs in the national economy is a "significant number" of jobs for the purposes of the ALJ's step five determination in this case.

Kellie W., after arguing that 48,000 jobs is not a "significant number," in the alternative, asserts that the word "significant" is vague and undefined. [ECF 25 at 15-18]. Kellie W. asserts that absent a definition or standard for "significant number," the ALJ must provide analysis, including empirically based criteria or an analytical standard, to demonstrate that the number of national jobs is significant for the purposes of step five. She provides no case law to support her position, except to state that a statute is unconstitutional if it is "so indefinite as to amount to 'no rule or standard at all.'" ***Exxon Corp. v. Busbee***, 644 F.2d 1030, 1033 (5th Cir. 1981), quoting ***A.B. Small Co. v. American Sugar Refining Co.***, 267 U.S. 233, 239 (1925). The court is not persuaded by this argument. As an initial matter, Kellie W.'s arguments are contradictory. Either she believes that the statute's language renders it unconstitutional, or 48,000 does not reach the level of significance required by the statute. She cannot have it both ways.

Moreover, the ALJ properly supported his finding that 48,000 jobs was a significant number for the purposes of step five, because he properly relied on the VE's testimony. *See* **20**

---

[5] Kellie W. states that she could only perform .032% of jobs in the national economy. .032% of 3,147,142 is 1,006 jobs.

**C.F.R. § 404.1566(e).**  The VE's testimony supported the ALJ's findings and was properly explained and discussed through the hypotheticals and questioning asked at the hearing.  *See Lamoureux v. Comm'r of Soc. Sec. Admin.*, 2021 WL 5850738, at *2 (3rd Cir. Dec. 10, 2021) ("While **20 C.F.R. § 404.1566** does not define "significant numbers,' the vocational expert's testimony that nearly 36,000 jobs were available in the national economy supports a finding that work existed in significant numbers").

An unpublished opinion in the Third Circuit recently addressed this argument.  *See Lamoureux*, 2021 WL 5850738, at *3.  The phrase "significant numbers" in **20 C.F.R. § 404.1566(a)** parrots the definition of disability found in **42 U.S.C. § 423(d)(2)(A)**; **§ 404.1566(a)**.  There the court discussed that "if we held **20 C.F.R. § 404.1566(a)** void, we would necessarily be required to hold the definition of disability in **42 U.S.C. § 423(d)(2)(A)** void too. We decline to hold this half-century-old statutory definition void."  *Lamoureux*, 2021 WL 5850738, at *3.  Further, the court in *Lamoureux* noted that "[t]he void-for-vagueness doctrine has no application to public-assistance provisions like section 423." *Lamoureux*, 2021 WL 5850738, at *3, citing *Nyeholt v. Sec'y of Veterans Affs.*, 298 F.3d 1350, 1356 (Fed. Cir. 2002); *Woodruff v. United States*, 954 F.2d 634, 642 (11th Cir. 1992).  Therefore, the phrase "significant numbers" in **20 C.F.R. § 404.1566(a)** cannot be void-for-vagueness.

Moreover, in challenging a statute for vagueness, the Eleventh Circuit found that a due process concern only arises when "*prohibitions* are not clearly defined.'"  *Woodruff v. U.S. Dep't of Labor*, 954 F.2d 634, 642 (11th Cir. 1992) (citations omitted) (emphasis in original). "Vague enactments offend due process because they do not provide sufficient notice of what is prohibited so that people may guide their behavior accordingly, and because they risk arbitrary application by not furnishing explicit standards for those who enforce them." *Woodruff*, 954

F.2d 634, 642.  For statutes that do not "attempt to guide conduct," but rather provide "an interpretive rule" for an agency to make decisions, then "the void-for-vagueness doctrine is wholly without merit."  ***Woodruff***, 954 F.2d 634, 642.  Here, the challenged statute only provides an interpretive rule for determining disability with no attempt to guide conduct.  Kellie W.'s constitutional claim against **20 C.F.R. § 404.1566(a)** fails.

Based on the foregoing reasons, the decision of the Commissioner is **AFFIRMED**.

ENTERED this 16th day of May, 2022.

/s/ Andrew P. Rodovich
United States Magistrate Judge

12